**SIGNED.**

**Dated: March 19, 2008**



_(signature)_

**JAMES M. MARLAR**
**U.S. Bankruptcy Judge**

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| PATRICIA FARNSWORTH, | ) | No. 4:07-bk-02168-JMM |
| | ) | |
| Debtor. | ) | **MEMORANDUM DECISION** |

On February 14, 2008, this court heard an objection to the Debtor's claim of homestead regarding her residence at 16488 W. Spur Bell Lane, Marana, Arizona.

Floyd White ( "White") is a creditor of the Debtor. He filed a timely objection to her homestead claim. His contention is that her homestead claim fails to take into account an equitable lien that he holds with regard to the residence, which he asserts must come before her homestead. White also recorded a *lis pendens* prepetition, in connection with a Pima County Superior Court lawsuit.

After the parties stipulated to the facts, the court took the matter under advisement. All parties and the court undertook additional research, and the parties filed supplemental briefs. In his supplemental pleading, White moved for leave to file a motion for stay relief in order to obtain final judgment in state court.

This court's duty, then, is to ascertain what type of interest White holds, and to determine whether the Debtor's claim of homestead is superior to any equitable lien held by White. After considering all points of view, the court now rules.

# FACTS AND PROCEDURE IN BANKRUPTCY

In 2004, while White and the Debtor were engaged to be married, the Debtor purchased real property in her name only, known as 16485 W. Spur Bell Lane, Marana. She used $10,000 of White's money and $3,000 of her own money as the down payment for the purchase.

After living together in the residence for a brief time, the couple broke up in 2005 and the Debtor locked White out of the premises. White filed a complaint in Pima County Superior Court, and recorded a notice of *lis pendens* on December 16, 2005, nearly two years before the bankruptcy filing. Following a trial, the Superior Court filed its Minute Entry on September 13, 2007, which contained the court's factual findings and legal conclusions. Although finding that no express or oral agreement existed between the parties, it nonetheless granted White an equitable lien for $10,000 (without interest) and the right to immediately foreclose the lien. The court further denied the Debtor's counter-claim pursuant to ARIZ. REV. STAT. § 33-420 to invalidate the *lis pendens* filed by White.

However, before the order was reduced to final judgment,[1] the Debtor filed this chapter 13 case on October 30, 2007. In her schedules, she listed her residence as having a value of $160,000. There exists, as a consensual lien against the property, a debt to Wells Fargo for $57,000. The Debtor claimed a $103,000 homestead exemption in the property, pursuant to ARIZ. REV. STAT. § 33-1101.[2] (Schedule C.) She scheduled White as an unsecured creditor with a disputed claim for $35,000. (Schedule F.)

---

[1] Here, the Minute Entry order, although signed by the judge, directed White to submit a form of judgment. Thus, the Minute Entry order was not the final judgment. *See In re Cahn,* 188 B.R. 627, 630 (9th Cir. BAP 1995); *see also Smith v. Ariz. Citizens Clean Elections Com'n,* 212 Ariz. 407, 415, 132 P.3d 1187, 1195 (2006) (notice of appeal filed after issuance of an unsigned minute order need not be dismissed as premature where a subsequent judgment is entered).

[2] Section 33-1101(A)(1) provides for a $150,000 homestead exemption. Debtor did not explain how she reached the figure of $103,000, which would appear to be $10,000 above her allowed exemption amount, after subtracting the deed of trust consensual lien. ($150,000 minus $57,000 equals $93,000).

2

White filed a secured proof of claim against the estate, pursuant to his equitable lien and *lis pendens* in the total amount of $21,685.10.[3]  In his objection to the Debtor's claimed homestead exemption, White maintained that the claimed exemption "impairs <u>his</u> lien" (emphasis supplied).

The Debtor filed her response, in which she contends that there is no equitable lien against the property, notwithstanding the *lis pendens*, and that, even if reduced to a judgment lien, it would be avoidable by the bankruptcy court under § 522(f)(1)(A) (provision for avoiding "judicial liens") or § 547(b) (provision for avoiding preferential transfers).  In essence, the Debtor is objecting to White's status as a secured creditor.

## ISSUES

1.      Whether White's claim in the real property is superior to that of the bankruptcy trustee (or to the chapter 13 Debtor).

2.      Whether White's equitable lien is superior to Debtor's homestead exemption, pursuant to state law.

3.      Whether White's equitable lien is an avoidable judicial lien which impairs the Debtor's homestead exemption pursuant to 11 U.S.C. § 522(f).

## THE LAW

### A.  Property Rights

The primary issue for this court to determine is the nature of White's interest in or claim to the Debtor's property.  Once decided, then the consequences of that interest will reveal themselves.  It is a fundamental bankruptcy concept that property rights are to be determined

---

[3]      In claiming $21,685.10,  White added to the $10,000 equitable lien, the post-judgment interest, as well as his attorney's fees and costs which the Superior Court instructed him to include in the form of judgment.

pursuant to state law. *Butner v. United States*, 440 U.S. 48, 55 (1979). Courts must look to state law to determine the validity, nature and effect of liens. *In re Southern Cal. Plastics,* 165 F.3d 1243, 1248 (9th Cir. 1999). It is also fundamental that a trustee can gain no better interest in property than was held by the debtor.[4] *Matter of Forester*, 529 F.2d 310, 316 (9th Cir. 1976).

## B. The Legal Effects of the *Lis Pendens* in the Bankruptcy Case

Working backward, we know that White's 2005 litigation against the Debtor concerned his claim to a legal interest in the residence to which the Debtor now holds legal title. When White began his lawsuit, he caused a *lis pendens* to be recorded in Pima County, where the real property is located. He sought either constructive co-ownership or an equitable lien. His state court action was one which "affected title" to real property, and therefore the state court found that the *lis pendens* was valid. *See Farris v. Advantage Capital Corp.*, 217 Ariz. 1, 170 P.3d 250, 253 (2007) (a fraudulent conveyance action affected title to real property and thus the filing of a *lis pendens* was authorized); *Coventry Homes, Inc. v. Scottscom P'ship*, 155 Ariz. 215, 218, 745 P.2d 962, 965 (App. 1987) ("an action to impose an equitable lien on real property is an action affecting title to that property"); ARIZ. REV. STAT. § 12-1191(A).

A *lis pendens* is a statutory method for a party to litigation to alert future purchasers or encumbrancers of "the property affected . . . and the claims . . made" in the complaint. ARIZ. REV. STAT. § 12-1191(B). The statute's purpose is twofold: (1) to give notice to future third parties that whatever rights they might consider acquiring in the land could be subject to a superior right asserted by the plaintiffs in a pending action, and (2) to enable the court in which the action is pending to retain the power to fully deal with such property, to the exclusion of future claimants. *Hatch Cos. Contracting, Inc. v. Arizona Bank*, 170 Ariz. 553, 556, 826 P. 1179, 1182 (App. 1991), *review denied* (1992).

It is also the law of Arizona that any property in litigation, against which a *lis pendens* has been filed, is "*in custodia legis*," a Latin term meaning "in the custody of the law" and "taken

---

[4] Here, the chapter 13 Trustee has taken no position on this issue.

Case 4:07-bk-02168-JMM    Doc 28    Filed 03/19/08    Entered 03/20/08 07:45:35    Desc
Main Document    Page 4 of 11

into the court's charge during pending litigation over it." *Warren v. Whitehall Income Fund* 86, 170 Ariz. 241, 823 P.2d 689 (App. 1991), *review denied* (1992); *see also* BLACK'S LAW DICTIONARY (8th ed. 2004).

In reviewing the propriety of a *lis pendens*, courts are reminded to avoid reaching the merits of the complaint unless it is necessary to resolve the issues. *TWE Retirement Fund Trust v. Ream,* 198 Ariz. 268, 271, 8 P.3d 1182, 1185 (App. 2000). Here, the Superior Court has now already decided the merits, and what is left is only entry of a formal judgment subjecting the property to the payment of the debt. *Wolfswinkel v. Super. Ct.*, 145 Ariz. 154, 156, 700 P.2d 852, 854 (App. 1985). Therefore, the task of the bankruptcy court is to harmonize state law with the Bankruptcy Code.

On the date that the Debtor filed bankruptcy, a trustee in bankruptcy (asserting "strong arm" powers), or a chapter 13 debtor, would stand in the shoes of--at best--a judgment lien creditor which had recorded his judgment on the same day as the bankruptcy case was filed (here, October 30, 2007). 11 U.S.C. § 544(a)(1). However, such judgment lien would be junior to the Wells Fargo recorded lien, and the equitable lien of the *lis pendens*, because, in general, the priority of a judgment lien is determined by, and runs from, the date of its recordation. ARIZ. REV. STAT. §§ 33-961; 33-967(D); 33-964. Wells Fargo's deed of trust and White's *lis pendens* claim had both been recorded prior to the bankruptcy filing date.

As for the *lis pendens*, any ultimate judgment in favor of a plaintiff would relate back to when the *lis pendens* was recorded. 51 AM.JUR. 2d *Lis Pendens* § 2. Thus, in this case, once the state court judgment is entered, White's equitable lien will be valid as of the date he recorded his *lis pendens*, December 16, 2005. *See In re Lane* , 980 F.2d 601, 606 (9th Cir. 1992) (holding that the litigant's attainment of a superior interest in real property related back in time to the filing of the *lis pendens*, construing former CAL. CODE OF CIV. P. § 409(a)), and *Tucson Estates, Inc. v. Superior Court,* 151 Ariz. 600, 603, 729 P.2d 954, 957 (App. 1986) (noting that Arizona's *lis pendens* statute was taken from former § 409 of the CAL. CODE OF CIV. P.).

In the Ninth Circuit, an equitable lien can only be avoided by a bankruptcy trustee, who is deemed to have had no actual or constructive notice of it. *In re Chenich,* 100 B.R. 512, 515

5

(9th Cir. BAP 1987) (citing *Stepp v. McAdams*, 88 F.2d 925, 928 (9th Cir. 1937)). Here, however, the prior recordation of the *lis pendens* deprives the trustee of his "deemed" status, and gives him the required notice. Therefore, the effect of the *lis pendens,* in this case, was to give White an interest in the homestead that is superior to the trustee, and thus defeats the bankruptcy trustee's "strong-arm" rights.

Nor could the bankruptcy trustee avoid the lien as a preferential transfer, under § 547, because any "transfer" of the superior interest occurred on the date of the filing of the *lis pendens.* *Lane*, 980 F.2d at 606. The *lis pendens* was filed on December 16, 2005, which was more than one year before the petition date, and therefore, outside of the preference period for a transfer to an "insider." 11 U.S.C. § 547(b)(4)(B).

## C. The Legal Effect of a Valid Equitable Lien on the Homesteaded Property

Having established that White's equitable lien dates back at least to December 16, 2005, the next question becomes: does it defeat the Debtor's homestead rights?

In Arizona, the homestead laws are interpreted liberally to advance the objectives of the statute, which is fundamentally to protect the family against the forced sale of the homestead property from certain creditors. *In re Foreacre*, 358 B.R. 384, 390 (Bankr. D. Ariz. 2006). However, the right to claim a homestead exemption is not unlimited, and equitable considerations are important. *Id.*; *In re Glaze*, 169 B.R. 956, 969 (Bankr. D. Ariz. 1994) (permitting setoff against homestead proceeds).

Again, the court must look first to the Arizona homestead statute for the answer. In pertinent part, the statute provides:

A. The homestead provided for in § 33-1101, subsection A is exempt from process and from sale under a judgment or lien, except:

1. A consensual lien, including a mortgage or deed of trust, or contract of conveyance.

2. A lien for labor or materials claimed pursuant to § 33-981.

6

3. A lien for child support arrearages or spousal maintenance arrearages. An award of court ordered support is not a lien for the purposes of this paragraph unless one of the following applies:

    (a) An arrearage lien has been reduced to judgment.

    (b) A lien exists pursuant to § 25-516.

    (c) The court orders a specific security interest of the property for support.

4. To the extent that a judgment or other lien may be satisfied from the equity of the debtor exceeding the homestead exemption under § 33-1101.

B. A sale as described in subsection A of this section and not excepted by subsection A, paragraph 1, 2, 3 or 4 of this section is invalid and does not convey an interest in the homestead, whether made under a judgment existing before or after the homestead is established.

ARIZ. REV. STAT. § 33-1103 (Amended 2007) (emphasis supplied).

White contends that the state court order treated the lien as a consensual lien, based on the parties' conduct, and gave no homestead exemption credit to the Debtor. Therefore, he maintains that his equitable lien is an exception to the Debtor's homestead rights under this statute.

The Debtor counters that, under Arizona law, an equitable lien is merely "floating equity" until a judgment is entered which subjects the property to payment of the debt. *Wolfswinkel*, 145 Ariz. at 156. Therefore, the Debtor argues that White had no interest in the real property as of the petition date . Extrapolating this argument further, Debtor argues that any subsequent lien imposed by a judgment would necessarily be a judgment lien, which would be trumped by the Debtor's homestead exemption.

It is well settled law that the nature of a lien is determined by how the lien was created. 2 COLLIER ON BANKRUPTCY ¶ 101.36 (15th ed. rev. 2007).

An equitable lien is a right, enforceable only in equity, to have a demand satisfied from a particular fund or specific property, when one does not have possession or title to such property. BLACK'S LAW DICTIONARY, "Lien" (8th ed. 2004). Put another way,

[a] equitable lien is a right over property constituting an encumbrance, so that the property itself may be proceeded against in an equitable action and either sold or sequestered upon proof of a contract out of which the lien could grow

or of a duty on the part of the holder so as to give the other party a charge or lien on it.

*Wolfswinkel*, 145 Ariz. at 156, 700 P.2d at 854.

An equitable lien can arise in different ways. First, in an express contract, the parties can indicate an intent to charge or appropriate particular property as security for an obligation. *S.R. Kalmanoff v. Weitz*, 8 Ariz. App. 171, 172, 444 P.3d 728, 729 (App. 1968). When such an agreement exists, courts will likely order the lien to relate back to the time of the agreement. *See In re Aumiller*, 168 B.R. 811, 821 n.20 (Bankr. D. Col. 1994) (lien related back to date of execution of a deed of trust).

Second, an equitable lien can also arise from the parties' conduct and facts of the case from which a court may imply that it was the parties' intention to charge a particular property for the repayment of a debt. *See Holder v. Williams*, 167 Cal. App. 2d 313, 317, 334 P.2d 291, 293 (App. 1959) (agreement that defendants could sell property and return balance to plaintiffs evidenced an equitable lien in favor of plaintiffs). In these situations, equity requires that the lien relate back to when the implied agreement took place. *Id. See also Nunez v. Nunez,* 196 B.R. 150, 153 & n.1 (9th Cir. BAP 1996) (court imposed an equitable lien "and stated that the lien was created at the time Appellant made the loans to Debtor"). Thus, the parties' intentions create the liens upon the equitable maxims that "equity heeds substance, not form" or that "equity treats as done that which ought to be done." Hon. W. H. Brown, 1 THE LAW OF DEBTORS AND CREDITORS" § 9:13 (2007).

Finally, an equitable lien can also be created by judicial decree in order to do equity under the peculiar circumstances of the case and prevent unjust enrichment. *Byers v. Wik*, 169 Ariz. 215, 224, 818 P.2d 100, 209 (App. 1991); *In re New York, N.H. & H.R. Co.*, 330 F. Supp. 131, 142 (D. Conn. 1979); *Restatement of Law on Restitution § 161.* For example, in *Rotary Club of Tucson v. Chaprales Ramos de Pena*, 160 Ariz. 362, 773 P.2d 467 (App. 1989), which was the case cited by the Superior Court, a beneficiary under a will used monies belonging to another devisee to purchase a home, and the court imposed an equitable lien on the home. 160 Ariz. at 470, 773 P.2d at 365.

8

Such equitable liens arise most commonly in divorce decrees, in order to effectively collateralize a future obligation, when a party is required to make equalization payments. *See, e.g., Tester v. Tester*, 123 Ariz. 41, 43, 597 P.2d 194, 196 (App. 1979); *Bryan v. Nelson*, 180 Ariz. 366, 368-69, 884 P.2d 252 (App. 1994); *In re Pederson*, 78 B.$. 264 (9th Cir. BAP 1987), *aff'd*, 875 F.2d 781 (9th Cir. 1989); ARIZ. REV. STAT. §§ 25-318(C), (D) and (E) (a codification of the equitable principles). These judicially imposed liens typically are not retroactive, but take effect upon judgment.

There is no question that, once entered, White's judgment will become a judgment lien for a definite sum. *See Nelson*, 180 Ariz. at 368-69. The equitable lien portion, which will be imposed by a judgment, will be deemed to have existed before the judgment (because of the relation back doctrine applicable to the *lis pendens* recordation). Thus, it would be inequitable to allow Debtor to use the homestead law or bankruptcy law to shelter her unjust enrichment. "Equality is equity" is a maxim associated with equitable liens. 53 C.J.S. *Liens* § 3 (2008).[5] In addition, if a party could avoid the imposition of an equitable lien by simply filing a bankruptcy proceeding, a previous judicial action declaring the lien's existence, as a matter of equity, would be a futile act which principles of equity would not indulge. Therefore, this court concludes that the Superior Court ruling impliedly imposed the lien retroactive to the date of the $10,000 contribution, such that § 33-1101 either excepts the lien as a type of consensual lien, or does not even apply to the equitable lien. Therefore, White's equitable lien must come before Debtor's homestead exemption, and the Superior Court's findings must be given legal effect.

## D. Alternatively, the Equitable Lien Would NOT be Avoidable Under § 522(f)

Section 522(f) of the Bankruptcy Code allows a bankruptcy court to avoid the "fixing" of a "judicial lien" on "an interest of the debtor in property" to the extent that, as of the petition date, such lien impairs an exemption to which the Debtor would have been entitled. *In re Chiu*, 266 B.R.

---

[5]     Additionally, the court takes guidance form the equitable maxim: "Equity treats as done that which ought to have been done."

743, 751 (9th Cir. BAP 2001), *aff'd*, 304 F.3d 905 (9th Cir. 2002). The term "judicial lien" means a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). Thus, a judgment lien is one form of judicial lien.

Courts are divided on whether equitable liens are judicial liens. Judicially imposed equitable liens, which are imposed in dissolution proceedings, are considered to be judicial liens, in the Ninth Circuit. *Pederson*, 78 B.R. at 267; *Huskey v. Huskey*, 183 B.R. 218, 223 (Bankr. S.D. Cal. 1995). However, the Supreme Court protects such liens from avoidance in bankruptcy because such a lien is not deemed to affix to a prior interest of the debtor when the property is divided simultaneously in the dissolution proceeding. *See Farrey v. Sanderfoot*, 500 U.S. 291, 299-300, 111 S.Ct. 1825, 1380-31, 114 L.Ed.2d 334 (1991) (where divorce decree awarded fee simple interest at the same time it granted an equitable lien, such lien was not avoidable because the debtor's ownership interest did not exist prior to the lien "affixing" to it). The Superior Court's ruling, in this case, therefore recognized only White's participation interest in the residential purchase, nothing more. And that interest came into existence simultaneously with the Debtor's ownership interest in the residence.

White contends that, even if the lien is a judicial lien, it did not affix to the <u>Debtor's</u> interest in property because it arose at the time he loaned the money, which was prior to the purchase of the real property. This court agrees with White. The lien is not avoidable under § 522.

Thus, White has established that his equitable lien encumbers the Debtor's real property, in order to prevent unjust enrichment by her.

## **CONCLUSION**

Based on the foregoing analysis, a separate order will be entered, pursuant to FED. R. BANKR. P. 9021, which:

1. Sustains White's objection to the Debtor's homestead exemption to the extent that it impairs his equitable lien; and

Case 4:07-bk-02168-JMM    Doc 28    Filed 03/19/08    Entered 03/20/08 07:45:35    Desc
Main Document    Page 10 of 11

2. Grants White's motion for stay relief, to the extent it authorizes him to obtain the final judgment from the Superior Court. However, to the extent that White now holds a secured claim against the Debtor's real property, he may not execute thereon. Instead, the Debtor will no doubt amend her plan in order to provide for payment of this debt over time.

DATED AND SIGNED ABOVE.

COPIES served as indicated below
on the date signed above:

Wayne Mortensen
Farnsworth Law Offices, Inc.
1837 S Mesa Dr #A103
Mesa, AZ 85210                                          Email: azflo@cox.net

Carl M. Tootle
P.O. Box 65597
Tucson, AZ  85728-5597                                  Email:  carl.tootle@azbar.org

Dianne C. Kerns, Trustee
7320 N. La Cholla #154
PMB 413
Tucson, AZ 85741-2305                                   Email: mail@dcktrustee.com

The Honorable Javier Chon-Lopez
Judge, Pima County Superior Court
2225 E. Ajo Way
Tucson, AZ  85713-6295                                  Email

Office of the U.S. Trustee
230 N. First Ave., Suite 204
Phoenix, AZ  85003-1706                                 U.S. Mail

By  /s/  M. B. Thompson
        Judicial Assistant

11